# DECISIONS

OF THE

# Supreme Court of Florida.

## JANUARY TERM, 1904.

GEORGE ALFORD, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

1. Whether testimony as to the character of a witness for truth and veracity is, or is not too remote to be competent evidence is to be determined by the trial judge in the exercise of a reasonable discretion.

2. Where a witness for the State was of somewhat nomadic habits of life, and the defendant introduced witnesses to show the bad reputation of the State witness for truth and veracity, and the defendant's witnesses show a reasonable acquaintance with the reputation of such State witness for a number of years before and up to the time of the trial by having lived a part of the time in the vicinity of such State witness, and having visited other neighborhoods in which he has lived, and there heard his reputation for truth and veracity discussed by persons living in such neighborhoods, such impeaching. testimony on the part of the defendant, is competent.

3. Before a defendant can introduce testimony to impeach a State witness, by showing that such witness had made statements inconsistent with or contradictory of his testimony, a proper predicate for such impeaching testimony must be laid; but where the purpose is to show the animus of a State witness towards a defendant,—that is to say, the bias or hostility of such State witness, his interest in the cause or his motives,— it is not essential that a predicate should be laid, in order that testimony may be introduced as to such bias, hostility, interest or motives.

47 Fla.—1

4. Where a State witness shows that he had had a reasonable opportunity to become acquainted with the tracks, or footprints of the defendant, it is competent for such witness to testify that in his opinion certain tracks or footprints which he saw near the scene of the alleged crime immediately after it occurred, were those of the defendant, because the matter of such testimony can not otherwise be reproduced or made palpable to the jury.

5. The opinion of a State witness that a person seen by her near the scene of the crime was the defendant is admissible testimony where it appears that such witness bases her opinion upon her own knowledge of, or acquaintance with the defendant; but such testimony is not competent if it appears from her testimony that she may have based her opinion upon other grounds than her knowledge of the defendant, and her recognition and identification of him from seeing him near the scene of the crime.

6. A witness may be permitted to date a fact which he knows by relating it to the time when he heard of another fact, and in so doing may state not only that he heard something, but what that something was, in order to let the jury see what reason he had to observe and remember; but the hearsay, though he repeats it on oath is not evidence either of the occurrence or of the date of the occurrence which it purports to affirm.

7. A motion to strike out the whole of the testimony of a witness when a part of it is competent, is properly overruled.

8. Where on cross-examination defendant's counsel asked a State witness to whom she had talked among the witnesses for the State, and the question, on objection was overruled, but the court stated that he would allow counsel to ask the witness if she had talked with any particular State witness, the ruling was not erroneous.

9. Where there are two counts in an information, and the defendant moves the court to require the county solicitor to elect upon which of the two counts he would ask for a conviction, and the motion is overruled, and the defendant is tried and convicted on one count and acquitted as to the other, it is not necessary for this court to pass on the propriety of the ruling of the trial court where the judgment of conviction is reversed on other grounds (see authorities cited in opinion).

This case was decided by the court *En Banc.*

Writ of error to the Criminal Court of Record for Escambia county.

The facts in the case are stated in the opinion of the court.

*C. M. Jones* and *Chas. M. Coston* for plaintiff in error.

*W. H. Ellis,* Attorney-General, for the State.

HOCKER, J.—At the September term, 1902, of the Criminal Court of Record of Escambia county, an information was filed by the county solicitor against George Alford and Jack Elsterman charging in substance in the first count that on the seventh of August, 1902, they did wilfully and maliciously set fire to and burn a certain building, to-wit: a dwelling house belonging to E. G. Creighton, and occupied as a dwelling by George Kelly. In the second count they are charged with setting fire to and burning a building, to-wit: a dwelling-house belonging to A. C. Berry, and occupied as a dwelling by George Kelly. At the November term, 1902, of the court, the defendants were tried, Jack Elsterman was acquitted, and George Alford was convicted under the second count, and sentenced to the penitentiary for fifteen years. A writ of error was sued out from this sentence and judgment, on the seventeenth day of July, 1903, returnable to the January term, 1904, of this court.

The first and second assignments of error are based on the striking of the testimony of W. L. Nelms, and of the testimony of Dan Nelms, witnesses for the plaintiff in error, as to the reputation for truth and veracity of Joseph Huggins, a witness for the State. Joseph Huggins had given important testimony for the State against Alford, and the plaintiff in error introduced as a witness W. L. Nelms who testified in chief, as follows: "I have lived in Escambia county, Florida, about forty-six years, near Muscogee; I

have known Joseph Huggins twenty years; I know his general reputation in the community in which he lives for truth and veracity; it is bad; I would not believe him under oath." On cross-examination he testified: "I heard his kin people, Mr. Simmons, Jeff. Grant and lots of other people around Muscogee discuss his reputation. Huggins has lived near Brents about a year. Before that he lived at Molino Mills two years. Before he·lived at Molino Mills he lived at Muscogee. I lived by him at Muscogee awhile. I heard Mr. Bryars discuss his general reputation at Brents; also heard my brother and Mr. Cooper discuss his general reputation at Molino. It was about a year ago that I heard his general reputation discussed by Cooper." At the conclusion of this testimony the county solicitor moved to strike out the testimony of said witness in reference to general reputation of Huggins, on the grounds that knowledge of same was too remote; which motion was sustained, and the ruling excepted to and assigned as error.

Dan Nelms testified in chief for the plaintiff in error as follows: "I have known Joseph Huggins about twenty-two years; he lived in a house with me two or three months at Cantonement; he lived all around the country; I knew him when he lived at Molino; he lives near Brents Station; I know his general reputation for truth and veracity in this community; it is bad; I would not believe him under oath." On cross-examination he said: "I live at Stockton, Alabama, and have lived there for the past six years; I have not seen Huggins in the last six years, but during the time mentioned, upon an average of once or twice a month, I visited Escambia county. During this time I have heard his general reputation discussed by different parties; some who lived in the neighborhood of Huggins." At the conclusion of said testimony the county solicitor moved to strike out all of the testimony of said witness referring to general reputation of Huggins, upon the ground that knowledge of the same by witness is not sufficient, which motion was sustained, the ruling excepted to and assigned as error.

Whether testimony as to the character of a witness for truth and veracity is, or is not, too remote to be competent evidence is to be determined by the trial judge, in the exercise of a reasonable discretion. In the case of *Dupree v. State,* 33 Ala. 380, S. C. 73 Am. Dec. 422, it is said: "The witnesses by whom it was proposed to show the character of the accused had known him for eight or ten years, and were acquainted with his character. This was sufficient to qualify them to testify as to his character, notwithstanding they may have resided more than twenty miles from him. Residence in the immediate vicinity of the person whose character is the subject of investigation, is not an indispensable qualification of a witness to testify as to the character. Such a remoteness of residence would not prove that the witness did not know what the character was, and, therefore, would not disqualify him to testify on the subject." It is said in Gillett on Indirect and Collateral Evidence, sec. 95 (p. 145): "If there is evidence that the general reputation of a witness for truth and veracity at the time of the trial is bad, then it is competent to go back of that time and fortify the prior evidence by proof that such reputation at a considerable time before had also been bad." 5 Am. & Eng. Ency. Law (2nd ed.) 884. In the case of *Brown v. Perez,* 89 Texas 282, 34 S. W. Rep. 725, there was testimony tending to impeach a witness, one Garza, by witnesses who had not seen him for many years. Garza went to Mexico in 1866, returned to Texas in 1874, again left for Mexico in 1878, returned to Texas in 1883, went to Mexico in 1892, and returned to Texas in about six months afterwards, where he subsequently remained. Garza proved by another witness a good reputation for fifty years. The court below refused to strike out the evidence impeaching Garza, and the appellate court reviews the law in an able opinion. It says: "Upon authority and sound principles, we think it may safely be said that where the evidence of a witness is such that it fairly raises the issue of his veracity or where the testimony of other witnesses

relating to his character at or near the time of the trial tends to impeach his character for truth and veracity, or in case the person whose character is in issue has removed beyond the jurisdiction of the court, or has been transient, so that he has no fixed and known residence for a time sufficient to make a reputation for truthfulness, resort may be had to evidence of the reputation of such witness at the place of his former residence, and at a time remote from the time of trial. No definite rule can be stated which will apply to all cases." The testimony of the two Messrs. Nelms tended to show that Huggins was somewhat nomadic in his habits of life, and also that his general reputation for truth and veracity was bad for a number of years before and up to the trial, and showed sufficient opportunity on their part to be informed as to that reputation. We think the court erred in ruling it out.

The plaintiff in error introduced as a witness one Maurice Fitzsimmons, who testified as follows: "I have lived in Escambia county, Florida, eight or nine years; have known Joseph Huggins sixteen or seventeen years; a portion of this time he lived about a mile from me, and another portion three-quarters of a mile; I lived near him in Muscogee in this county; it has been several years since I lived in the same settlement with Huggins; I know what his general reputation was for truth and veracity at the time I lived near him. *Question.* What was that reputation? To the asking of which question counsel for the prosecution objected upon the ground that said testimony was not confined to the settlement in which witness Huggins lived; which motion was sustained, to which ruling plaintiff in error excepted and assigns as error. Under the circumstances of this case, under the authority before quoted, the testimony should have been admitted, and the court erred in rejecting it.

The plaintiff in error introduced as a witness one George Corley, and the following examination and proceedings were had: *Q.* "State whether or not you saw

Mrs. Betsy Gates, the witness here (and a witness who had given material evidence for the State), at Rosenau & Gerald's store in the city of Pensacola on yesterday morning between nine and ten o'clock? *A.* I did. *Q.* State whether or not you heard Mrs. Gates at that time and place say anything in reference to defendants? To which said question the county solicitor then and there objected, upon the ground that no predicate had been laid for the introduction of conversation of witness. Said objection was sustained and defendants by their counsel did then and there except. *Q.* State whether or not you heard her say what she was going to do with defendants. *A.* I did. *Q.* Now state what she said. To which said question the county solicitor then and there objected, because no predicate had been laid for same, and said objection was sustained and defendants by their counsel did then and there except. *Q.* State whether or not at said time and place you heard the witness express any ill-will against the defendants, or either of them. To which said question the county solicitor then and there objected, because no predicate had been laid for same. Said objection being sustained, the counsel for the defendants excepted." These rulings of the court form the basis of the fourth and fifth assignments of error.

The first question to which an objection was sustained was perhaps too broad, as it did not indicate otherwise than that its purpose was to lay the foundation for impeaching the witness by showing that she had made contradictory statements; but it appears from the other questions to which objection was made, that they were intended to show the animus of the witness Betsy Gates towards the defendants. In order to show by testimony the bias or hostility of the State witness towards the defendants, we do not think it was essential that a predicate for such testimony should have been laid in the examination of Betsy Gates. In the case of *Bryan v. State,* 41 Fla. 643, 26 South. Rep. 1022, this court held: "Questions touching interest, motives, animus or the status of witnesses to the suit, or par-

ties to it, are not collateral or immaterial. As to such mat-
ters inquiry may be had and it is not within the discretion
of the court to exclude it," and the court refers to the
doctrine of *Eldridge v. State,* 27 Fla. 162, 9 South. Rep.
448, in which it is said the motives, interest or animus of
a witness are not collateral, and can be shown as independ-
ent evidence and considered by the jury in estimating credi-
bility. In this case and in this connection the court refers
to *Peeple v. Brooks,* 131 N. Y. 321, 30 N. E. Rep. 189,
where it is distinctly held that the hostility of a witness
towards a party against whom he is called may be proved
by any competent evidence, either by cross-examination of
the witness or by the testimony of other witnesses, and that
it is not necessary that the witness should be first examined
as to his hostility before calling other witnesses. *Stewart
v. State,* 42 Fla. 591, 28 South. Rep. 815; *Selph v. State,*
22 Fla. 537.

A State witness, E. G. Creighton, testified that a track
he saw at the brick-yard near the scene of the fire, on the
morning afterwards, he believed to be Alford's. He also
testified that, in his opinion, one of the tracks he saw in
the road as he was driving to the brick-yard in a buggy,
was Alford's. His testimony shows that he had some op-
portunity for observing Alford's track and becoming ac-
quainted with it. The testimony of the witness as to his
"opinion" and "his belief" that the tracks were Alford's
was objected to and motions made to strike them out on
the ground no proper predicate had been laid for such
testimony. The witness had stated that when Alford
worked for his father at the brick-yard before the time of
the fire, he would go to the brick-yard upon the same road
that Alford travelled and he could tell in the mornings by
the tracks in the road whether Alford had gone on. He
stated that Alford's track had a peculiarity about it in that
it pressed down hard on the outside of the foot, and hard
on the inside of the heel. Ordinary witnesses may give
their opinions in connection with the facts upon which they

are founded when the matter to which the testimony relates can not otherwise be reproduced or made palpable to the jurors that they may draw correct or intelligent conclusions therefrom. 12 Am. & Eng. Ency. of Law (2nd ed.) 448. This principle applies to foot-prints of tracks. Lawson on Expert and Opinion Evidence, 624. We think there was a sufficient predicate for the evidence objected to, and there was no error in the rulings of the court thereon.

Susie Lisco, a witness for the State, testified that about August 1st, 1902, she was at the brick-yard (where the fire occurred) ; that about 7 :30 P. M. that night while Mrs. Bibrick and witness went to the spring to get some water she saw two men by the side of the path and they disappeared in the bushes; that she could not identify the men; they were middle sized, and that she did not pay much attention to them. She was then asked by the county solicitor if she did not state at the preliminary trial that she had an opinion as to who the two men were that she saw. This question was objected to by defendants on the ground that the proper predicate for the introduction of this testimony had not been established, which objection was overruled, to which ruling the defendants excepted. She answered, "yes;" and was then asked, what was that opinion? She answered, my opinion was that it was the defendants. She was then asked is that your opinion now? This question was objected to on the same ground as the former one, the objection overruled, and an exception taken to the ruling. The witness answered: "I am of the same opinion now. I have known Alford for nearly a year and Elsterman for about six months. I called the attention of Mrs. Bibrick to these parties, and she replied, 'it is Carl Paul trying to frighten us.'" On cross-examination this witness said: "It was just about dark when I saw the men on the way to the spring. The moon was just rising; I saw them just as they dodged into the bushes; I have never seen much of Elsterman or Alford."

These exceptions form the basis of an assignment of error here. This court has said that "the opinion of a witness as to the identity of a person seen by him, is admissible in all cases where the witness has a previous personal acquaintance with, or knowledge of such person, and bases his opinion upon such acquaintance or knowledge." *Roberson v. State,* 40 Fla. 509, 24 South. Rep. 474. In her examination in chief the witness stated that she could not identify the parties she and Mrs. Bibrick saw when they were going to the spring. It is true that when pressed by the county solicitor she said she had expressed the opinion at the preliminary trial that they were the defendants. Her whole testimony, however, leaves us in doubt whether that opinion may not have been based upon other grounds than her knowledge of the defendants and her recognition and identification of them from seeing them near the spring. If this case is again tried this evidence should not be admitted unless it is made clearly to appear that the opinion of the witness as to the identity of defendants is based upon her knowledge and recognition of them when she saw them.

The State witness, Betsy Gates, testified as follows: "The brick-yard is about three miles from where I live; it was burned 7th of August; I saw Elsterman going that way; he came back about sundown; I met Alford going to Elsterman's; I didn't go to the fire; I haven't been there since; I was told place was burned."

The counsel for defendants moved to strike out the testimony of the witness with reference to the fire, on the ground that same was hearsay, which motion was overruled, counsel for defendants excepted to this ruling, and upon it assign error here. It appears from the whole testimony of this witness that she referred to the date when she heard the fire had occurred only for the purpose of fixing the date when she saw Elsterman and Alford together, and not for the purpose of proving the date of the fire. In the case of *Harris v. Central R. R.,* 78 Ga. 525, 3 S. E. Rep. 355, Chief-Justice BLECKLEY says: "A wit-

ness may date a fact which he knows by relating it to the time when he heard of another fact, and in so doing, may state not only that he heard something, but what that something was, in order to let the jury see what reason he had to observe and remember; but the hearsay, though he repeats it on oath, is not evidence either of the occurrence or of the date of the fact which it purports to affirm." In *Hill v. North,* 34 Vt. 604, it is held: "A witness may state what a third person said, for the purpose of identifying a particular occasion or date." 15 Am. & Eng. Ency. of Law. (2nd ed.) 314. The contention that the court erred in this ruling is not sustained.

Mrs. S. Huggins, a witness for the State, testified that she saw Alford at her house on a Sunday, a few days before the fire, and heard him say he had a grudge against Creighton ever since he came to his house and raised a row with him; said he would pay him before long, and he would not make it light; said he would have him called to the door and shot down with a Winchester, for Winchester bullets did not tell any lies. Her husband was present and two or three children at the table. On cross-examination the witness admitted she was not present when that part of Alford's conversation occurred about calling Creighton to the door and shooting him with a Winchester; that her husband told her of it in the pear orchard. Defendant moved to strike out her testimony because it was hearsay, which motion was overruled, and the ruling is assigned as error. As part of the witness' testimony was not hearsay, and was competent evidence, the court committed no error in refusing to strike the whole of it. The motion was too broad. *Cook v. State,* 46 Fla. 20, 35 South. Rep. 665; *Hoodless v. Jernigan,* 46 Fla. 213, 35 South. Rep. 656.

Defendants' counsel on cross-examination asked a State witness, Betsy Gates, who she had talked to among witnesses for the State. This question was objected to by the county solicitor and his objection sustained, the court stating that it would permit counsel for defendants to ask

witness if she had talked to any particular State witnesses to be named in the question. The court committed no error in refusing to permit the question in the form propounded. Under the ruling of the court any proper information could have been elicited.

The defendants' witness, Mrs. Martha Fitzsimmons, testified as follows: "I know the general reputation of Joseph Huggins for truth and veracity in the community in which he lived; it is bad; I would not believe him under oath." On cross-examination she stated she had not lived in the same settlement with Huggins for several years. The county solicitor moved to strike out this testimony on the ground that it was too remote. This motion was sustained, exception noted, and the ruling assigned as error. Testimony had already been offered tending to show the bad reputation of Joseph Huggins for truth and veracity for a considerable period before and up to the time of the trial. We think under the circumstances of this case the court erred. Gillett on Indirect and Collateral Evidence, sec. 95, *supra*.

At the conclusion of the testimony the defendant moved the court to require the county solicitor to elect upon which of the two counts of the information he would ask for a conviction—the count charging ownership in E. C. Creighton, or the count charging ownership in A. C. Berry. This motion was overruled, and the ruling assigned as error. The defendant was found guilty under the second count of the information, which amounted to an acquittal on the first count, so that it is not necessary to pass on this assignment as the same question can not arise upon another trial. But in order to prevent any misapprehension of the law we refer to *Eggart v. State,* 40 Fla. 527, 25 South. Rep. 144, and cases there cited, in which the question involved is settled. See, also, *Long v. State,* 42 Fla. 509, 28 South. Rep. 775, and cases cited.

The last assignment of error is predicated on the refusal of the court to grant a new trial. Each of the grounds

of said motion which are argued here have already been examined, except those relating to the sufficiency of the evidence to support the verdict, which need not be considered as a new trial is granted on other grounds.

For the errors indicated the judgment is reversed, and a new trial granted.

SHACKLEFORD, COCKRELL and CARTER, JJ., concur.

WHITFIELD, J., disqualified, took no part in the consideration of this case.

TAYLOR, C. J., absent on account of sickness.