WILLIAM TELFAIR, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1. For what is essential to be set up in a plea of former acquittal, see State v. Strobhar 55, Fla. 167, 47 South. Rep. 4, and cases cited.

2. The defendant named William Telfair, is charged with forging a receipt given to him, in which his name is spelt *Telefair*. On the trial it appears he had the receipt in his possession and claimed rights under it; Held, that the defendant is identified as the person named in the receipt.

3. A defendant in a criminal case has the right on cross-examination to propound questions to an important State witness tending to elicit the animus of the witness towards the defendant, and in such a case it is not necessary that a predicate should be laid for the introduction of such testimony.

This case was decided by Division B.

Writ of Error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

*W. E. B. Smith,* for plaintiff in error;

*W. H. Ellis,* Attorney General, for the State.

HOCKER, J.—The plaintiff in error was tried and convicted of uttering a forged receipt in the circuit court of Jackson county in July, 1908, on an indictment filed on the 20th of November, 1907. He has brought the judgment entered thereon to this court for review.

The first assignment of error questions the rulings of the court in sustaining demurrers to several pleas in which the defense of former acquittal was attempted to be set up. Independent of the fact that the former acquittal was of the offense of forgery, and not of uttering a forgery, the pleas fall far short of the requirements of such pleas, as laid down by this court in several cases. See Strobhar v. State, 55 Fla. 167, 47 South. Rep. 4.

Another assignment of error questions the action of the court in refusing to give special instructions requested by the defendant, numbered 2, 11 and 14. The court gave fourteen special instructions at the request of the defendant, and we think that every essential matter contained in the instructions which were refused is contained in the instructions and charges which were given by the court.

Another assignment is based on the action of the court in admitting in evidence the alleged forged receipt on which the indictment was based. The receipt was in the following words and figures:

"$2.50                              Mch. 17, 1906.
     Received of Wm. Telefair Two & 50|100 Dollars in
     full on buggy.
·No,                    (Signed) J. D. Smith."

The contention seems to be, first, that the name stated in the receipt is written Telefair, and not Telfair; and, second, it does not appear that it was given for money to be credited on a paper purporting to be a security given by Telfair to J. D. Smith to secure the payment of a note given by Telfair to·Smith for the purchase of a buggy. As to the first contention, the evidence abundantly shows that Telfair had the receipt in his possession, and claimed rights under it, *viz.*, full payment of

what he owed Smith—on the ground of the words "in full," which, it is contended by the State, were not written in the receipt when it was given and constituted the forgery. The mere writing of the name of Telfair with an unnecessary additional letter presents no difficulty in identifying the receipt as intended for the defendant. As to the second contention it seems to us the evidence shows plainly that Telfair understood the receipt as applying to the debt he owed Smith, and claimed it showed a payment in full of that debt.

Another assignment presents a more difficult question. One C. G. Hartsfield was a very important State witness. He was a clerk or bookkeeper for J. D. Smith, and the person who wrote the receipt. It was by him principally that the State undertook to prove the forgery of the receipt, by the insertion therein of the words "in full." On cross-examination he was asked the following question by the defendant: "Didn't you ask one of the jurors why in hell didn't you convict that damn negro, or some similar expression, and came pretty near getting into a fight when the juror resented it, when this same man was acquitted of the charge of forging this identical receipt?" The court refused to allow this question to be propounded to this witness. The question is somewhat bunglingly expressed, but we think its meaning and purpose are plain, and that the court erred in refusing to allow it. The object of the question was to elicit the animus of the witness towards the defendant, and not necessarily to impeach him.

In the case of Alford v. State, 47 Fla. 1, 36 South. Rep. 436, we distinctly held: "Before a defendant can introduce testimony to impeach a State witness, by showing that such witness had made statements inconsistent with, or contradictory of his testimony, a proper predicate for such impeaching testimony must be laid; but

where the purpose is to show the animus of a State witness towards a defendant—that is to say, the bias or hostility of such State witness, his interest in the cause, or his motives, it is not essential that a predicate should be laid, in order that testimony may be introduced as to such bias, hostility, interest or motives." In the case of Pittman v. State, 51 Fla. 94, 41 South. Rep. 385, text 394, this doctrine is reaffirmed and it is there stated that a wide range of cross-examination is permitted as a matter of right in regard to the motives, interest or animus of a witness. See also Vaughn v. State, 52 Fla. 122, 41 South. Rep. 881. For this error the judgment below must be reversed. No other question presented by the assignment is argued here, except that the verdict is contrary to the evidence, and that question, under the circumstances, it is not necessary to consider.

The judgment below is reversed, at the cost of Jackson county.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.