PEARSON, Chief Judge.
After a jury trial the appellant was convicted of operating a gambling room and was sentenced to pay a fine of $3,000 or in default thereof to be confined in the state penitentiary for three years. He presents three points. The third point attempts to show error upon the court’s “denying defendant’s demand for an indictment by grand jury”. This point is not supported by an assignment of error and therefore may not be considered. Tracey v. State, Fla.1961, 130 So.2d 605, 610. Appellant’s remaining points urge errors relating to rebuttal testimony offered by the state.
Through the testimony of a state investigator the state established prima facie that the appellant operated a bookmaking establishment in a hotel located in North Bay Village, Florida. Appellant then called the manager of the hotel, who testified that to his knowledge there was no bookmaking operation on the premises. The state in its case on rebuttal called the Chief of Police of North Bay Village. He testified that shortly before the time the bookmaking testified to by the state investigator took place, he had had a conversation with the hotel manager. The substance of the police chief’s testimony was that during the conversation the manager admitted that he (the manager) knew that bookmaking in the hotel was in progress.
The rebuttal evidence was objected to by the appellant upon the ground that no predicate had been laid for the impeaching testimony. See § 90.10, Fla.Sta., F.S.A.; Bennett v. State, 66 Fla. 369, 63 So. 842 (1913); Hancock v. McDonald, Fla.App.1963, 148 So.2d 56. Appellant urges that the admission of the prior inconsistent statement without the predicate required by rule and statute is reversible error. The state on the other hand maintains that although no proper predicate was laid, the testimony was admissible as rebuttal evidence under the exception stated in Alford v. State, 47 Fla. 1, 36 So. 436, 438 (1904). In addition the state urges that there was no prejudicial error since the testimony concerned a collateral issue, not the guilt or innocence of the appellant.
In Alford v. State a judgment of guilty to setting fire to and burning a building was reversed and a new trial granted for errors in rulings upon the admissibility of testimony. One reversible error was the trial court’s sustaining of the state’s objection to the following question put to a rebuttal witness: “State whether or not at said time and place you heard the witness express any ill will against the defendants, or either of them.” The prosecutor objected to the question because no predicate had been laid. The Supreme Court held that it appeared from other questions to which objection had been made that the question objected to was intended to show the animus toward the defendants of the witness referred to in the question. The court pointed out that it is not essential to lay a predicate in order to have the testimony of one witness show the bias or hostility of another witness.
The holding in Alford v. State is not authority for the admission of the police chief’s testimony. It is clear from the record that the court admitted the police chief’s testimony in order to impeach the hotel manager by showing that the manager had made a prior inconsistent state *307 ment to the chief. There is nothing in the record to show that the purpose of the police chief’s testimony was to show the animus of the hotel manager. The suggestion that such was its purpose was presented for the first time in this court. We hold that the admission of impeachment testimony without the laying of a predicate was reversible error.
Another aspect of this case requires comment. Early in the closing argument to the jury a prosecutor used the testimony of the police chief as though it were direct evidence of the guilt of the appellant rather than as evidence tending to impeach the hotel manager’s testimony[1] even after being advised by the court that such use was improper. Appellant contends such misuse of the police chief’s testimony requires reversal since the court denied his motion that the misuse constituted grounds for a mistrial. We need not decide that point upon this appeal. But we do indicate that such a use of impeachment testimony has been held to be reversible error. Adams v. State, 34 Fla. 185, 15 So. 905, 908 (1894); Whorely v. State, 45 Fla. 123, 33 So. 849 (1903); Hernandez v. State, 156 Fla. 356, 22 So.2d 781, 786 (1945). Cf. Akin v. State, 86 Fla. 564, 98 So. 609, 613 (1923) ; and the statement: “it is improper for counsel so to frame their argument as to induce the jury to appropriate for general purposes testimony admissible only for a limited purpose” at 23A C.J.S. Criminal Law § 1093, pp. 144-145. In view of the error upon the admission of the testimony we do not here consider whether the statement by the state in closing argument should be considered fundamental error.
The state’s contention that the erroneously admitted testimony was not prejudicial is untenable. Section 90.10, Fla.Stat. (1967), F.S.A., can have no purpose other than to protect the interests of a litigant. Therefore violation of that statute cannot be considered harmless error. Cf. Trafficante v. State, Fla.1957, 92 So.2d 811; Birge v. State, Fla.1957, 92 So.2d 819.
Reversed and remanded for new trial.

. * * *
“Now, we further believe that * * * you will recall the testimony which has been given here — I believe you will recall that putting all this together, you will realize that in March of 1966, the North Bay Village police, then Chief of Police Hodges, had reason to be conducting activities and said, ‘Are you investigating us?’
‘For what?’
He says, ‘Well, you know what.’
‘No, I don’t know what. What?’
He says, ‘Well, have you read — ’ —and then there was a conversation in which Hogan asked Chief Hodges about investigations of the Harbor Island Spa, and the subject of bookmaking was discussed; in which Mr. Hogan, the comptroller of the Harbor Island Spa, told Chief Hodge, ‘Well, Gulfstream is about already to close. I know that it is stupid, we shouldn’t do it, it is hook-making ; hut after Gulfstream closes, then we will call a halt.’ ”
* * * * *
“Ladies and gentlemen: I believe I was at the point of discussing with you Chief Hodge’s testimony.
Chief Hodges told you that he had a conversation with Frank on the 23rd day of March, 1966, in which Frank Hogan admitted to him that bookmaking was going on at the Harbor Island Spa, and that he was concerned about it to the point where he even asked the Chief, ‘Can you tap a switchboard telephone ?’
Now, thereafter, through the State Attorney’s office, Perry Rivkind was assigned this particular investigation.”