327 So.2d 193 (1976)
Jimmy G. HUNT, Petitioner,
v.
SEABOARD COAST LINE RAILROAD COMPANY, a Railroad Corporation, Respondent.
No. 46294.
Supreme Court of Florida.
January 14, 1976.
Rehearing Denied March 15, 1976.
*194 Robert Orseck of Podhurst, Orseck & Parks, and Hastings, Goldman & Forman, Miami, for petitioner.
Philip A. Webb, III, of Webb, Swain & Watson, Jacksonville, for respondent.
SUNDBERG, Justice:
Petitioner recovered a $200,000 verdict and judgment in the Circuit Court in and for Duval County on a claim brought against respondent under the Federal Safety Appliance Act, Power Brake Law, and the Boiler Inspection Act (45 U.S.C.A. §§ 8, 9 and 23), and the Federal Employees' Liability Act (45 U.S.C.A. § 51 et seq.). The District Court of Appeal, First District, reversed and remanded for new trial, one judge dissenting. We have jurisdiction through exercise of our power to hear cases under conflict certiorari. Art. V, § 3(b)(3), Florida Constitution.
Our summary of the facts from which the cause arises will be brief, because they are set out fully in the opinion by the able judge of the District Court, Fla.App., at 299 So.2d 84.
Petitioner was employed by respondent in an area adjacent to Durham, North Carolina, and was injured while working on a train crew that was pushing three railroad cars loaded with sand onto an above-grade trestle or chute. Petitioner had been riding on the lead end of the lead car. When the train did not stop at the proposed point, petitioner jumped off just as the lead car struck the butt block on the end of the chute and went past the end of the rails. In this manner petitioner sustained his injuries.
It was petitioner's job to "spot" or place the cars on the chute, and, in performing his duties, he was to give signals to the engineer for spotting the cars in their proper places. At trial petitioner claimed he gave proper signals at the proper times and that the train's failure to stop properly was due to defective brakes. Respondent contended that the lead car struck the butt block and went past the end of the rails because of petitioner's failure to give the necessary and proper signals to the engineer; the contention was that petitioner waited until too late to give a "slow" signal and then gave a simultaneous "emergency stop" signal when the lead car was too close to the end of the chute to be stopped under any conditions.
The engineer, one Pergerson, a resident of Raleigh, North Carolina, did not come to Florida for the trial, but his deposition, which was previously taken on November 29, 1972, in Raleigh by the attorney for petitioner, was published in evidence by respondent. His testimony supported respondent's contentions relative to the lack of signals given by petitioner. The deposition of a switchman, Alexander, was inconclusive on this matter.
At trial on December 15, 1972, petitioner took the stand in rebuttal to Pergerson's deposition testimony. He testified, over objection of respondent, that on Sunday, December 3, 1972, (twelve days previously and four days after the deposition was taken) Pergerson left a telephone message for him while petitioner was out. Petitioner testified as follows regarding the telephone conversation between him and Pergerson when the call was returned:
"A ... He says, `I haven't been about to sleep since Wednesday night.' And this was Sunday.
"`My conscience has been bothering me, because I told three or four lies.'
"Q And what did he tell you about that?

*195 "A Onliest one he really elaborated on was the signals, and that he knew me and Louis both were giving signals.
"Q All right, sir. Now, did he mention anything in regard to himself and the railroad?
"A Yes, he stated that they had just kept after him until he told them what they wanted to hear.
"Q All right, sir. Now did he go into any more of the statements that he said were not true other than the one about the signals?
"A No, that's the onliest one he got into."
Petitioner further testified that he advised his attorney of the conversation immediately and that Pergerson wanted petitioner to call the latter's counsel and that he did so.
On appeal, the District Court of Appeal determined that admission of the quoted testimony was prejudicial error and reversed the judgment for petitioner. That Court held that the testimony at issue went considerably beyond the showing of bias or animus and constituted direct impeachment of Pergerson's previous testimony by hearsay and that no proper foundation had been laid. Cf. Davis v. Ivey, 93 Fla. 387, 112 So. 264 (1927); Fla. Stat. § 90.10.
Our view of this matter accords more with the position taken by Judge Boyer in his dissenting opinion. 299 So.2d at 89-90. The evidence adduced from petitioner by petitioner's counsel concerning the Pergerson telephone call went directly to the issue of bias or animus on the part of the witness for the defense. See McCormick, Evidence (Cleary ed. 2d ed.) § 40. A predicate for the introduction of such evidence need not be laid. Alford v. State, 47 Fla. 1, 36 So. 436 (1904); Telfair v. State, 56 Fla. 104, 47 So. 863 (1908). These cases, despite their age, still enunciate the correct law of this jurisdiction on this matter. As used, the subject testimony is not hearsay, because it is used to show the declarant's state of mind, not the truth or falsity of the statement made. McCormick, supra, § 249. The perceived threat to future employment intimated to Pergerson provides a powerful source of bias or animus against the petitioner in the subject litigation. The fact that the statement would be inadmissible hearsay for purposes of impeachment because of failure to satisfy the conditions of Fla. Stat. § 90.10 regarding the existence of a predicate is irrelevant. Merely because the statement would not be admissible for one purpose does not mean it is not admissible for another. Barnett v. Butler, 112 So.2d 907 (2d D.C.A.Fla. 1959); McCormick, supra, § 59.
We would also observe, alternatively, that the challenged testimony was admissible as an admission by a party-opponent. See McCormick, supra, § 267, page 641. The "modern view", as discussed therein, would seem to favor admission of the subject remarks under this exception to the hearsay rule. Of course, based on this premise, the testimony would be admissible to show the truth of the engineer's statements and not for the limited purpose of showing bias. Florida courts have consistently admitted into evidence statements by employees concerning matters arising from the course of their employment under the doctrine of admissions. Myrick v. Lloyd, 158 Fla. 47, 27 So.2d 615 (1946); Montgomery Ward & Co. v. Rosenquist, 112 So.2d 885 (2d D.C.A.Fla. 1959); Gordon v. Hotel Seville, 105 So.2d 175 (3d D.C.A.Fla. 1958), cert. denied 109 So.2d 767 (Fla. 1959). It is important to note that such statements are admissible because they are the admissions of a party-opponent or adverse party and not because they are declarations against interest. The differences between these two well-recognized exceptions to the hearsay rule are: an admission is made by a party to the litigation, while a declaration against interest is made by a non-party; an admission *196 comes into evidence despite the presence at trial of its author, while the general hearsay rule concerning unavailability of the declarant applies in the case of declarations against interest. The statement sought to be introduced as an admission need not have been consciously against the interest of its maker at the time it occurred, while the declarant in the case of the other hearsay exception must have been aware of a risk of harm to his own interests at the time he spoke. See McCormick, supra, § 276; 5 Wigmore, Evidence § 1475.
Accordingly, the judgment of the District Court of Appeal is quashed and the cause is remanded to the District Court of Appeal with instructions to affirm the judgment of the trial court.
It is so ordered.
ADKINS, C.J., and BOYD and OVERTON, JJ., concur.
ROBERTS, J., dissents.
ENGLAND, J., dissents with an opinion, with which FERRIS, Circuit Judge, concurs.
ENGLAND, Justice (dissenting).
I dissent. There is no direct conflict between the district court's decision and the decision of any other Florida appellate court. Judge McCord's opinion for the majority below carefully harmonized the decisions alleged by petitioner to require the exercise of our jurisdiction.
The majority here has now changed the result of this case, but it has not clarified or harmonized any point of law which was previously unclear or confusing. Florida Power & Light Co. v. Bell, 113 So.2d 697 (Fla. 1959). I view our constitutional role as being more narrow than providing litigants with a second appeal in select cases. I would discharge the writ of certiorari.
FERRIS, Circuit Judge, concurs.